UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____ x

MARIA RUSCELLI,

                Plaintiff        DOCKET NO.

    -against-

                                  COMPLAINT
                             *Jury Trial Demanded*

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK,
Corporation council
100 Church St      Defendants
Ny.NY 10007

_____ x



RECEIVED OCT 05 2023 PRO SE OFFICE

ORIGINAL

CV 23-7475

BLOOM, M.J.

PLAINTIFF MARIA RUSCELLI, ("Plaintiff") proceeding Pro Se, as and for her

Summons and Complaint filed to protect her Constitutional rights against the above-

captioned Defendant DEPARTMENT OF EDUCATION OF THE CITY OF NEW

YORK (henceforth "DOE") alleges upon knowledge as to her own facts and upon

information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.This is a civil action seeking injunctive relief, monetary relief, including past and on-

going economic loss, compensatory and punitive damages for violations of

Constitutionally protected rights given to her as a tenured teacher under Education Law

§§3030 and 3020-a, namely to have a due process hearing and proper determination of

probable cause before any charges are filed against her which diminish her property and

liberty rights, including her right to her protected right to her religious beliefs as well as

1

accommodations for these beliefs in her workplace. Plaintiff brings this action under, 42 U.S.C. § 1983, Title VII Discrimination, Stigma Plus, First and Fourteenth Amendment of the United States Constitution, Education Law §3020 and §3020-a and those parts of the New York State Constitution which similarly apply with like language and together with this Court's pendent jurisdiction over causes of action arising under New York State laws, both common and statutory; NYCHRL and N.Y.C. Admin. Code §8-107(3)(a), State laws governing employment, seeking monetary and declaratory relief against Defendant for committing acts with the intent and for the purpose of depriving Plaintiff of property and liberty rights without the procedural due process guaranteed under the Free Exercise Clause, First Amendment and Fourteenth Amendment of the Constitution of the United States, and for refusing to or neglecting to  prevent such deprivations and denials to Plaintiff.

2. Plaintiff was punished by her employer because of her religious beliefs which prohibited her from getting vaccinated by the COVID-19 vaccine with the result of her being terminated on March 17, 2022 without just cause, and without a due process hearing  known as "Section 3020-a". This due process hearing is a guaranteed right given to her by law and Union Collective Bargaining Agreement ("CBA"). This due process hearing is also public policy in New York State for all tenured teachers.

3. Plaintiff was discriminated against for her religious beliefs by the Defendant's autocratic and arbitrary imposition of the COVID Mandate on employees without any exceptions, and, at the same time, placing her fingerprints into the "Problem Code" which is sent to the same database used by the FBI and which permanently scars her as

2

committing misconduct. As long as she is on the Problem Code database she is blocked from getting a salary for any position at the Department.

4. But for the approval of the denial of these protected rights by the DOE, Plaintiff was wrongfully, maliciously and in bad faith terminated and stigmatized permanently by being wrongfully terminated and placed on the Ineligible/Inquiry or "no hire" Problem Code List.

5. Plaintiff requests judgment against Defendants for refusing to or neglecting to prevent such deprivations and denials to Plaintiff pursuant to Civil Service Law §75 (b)(2)(a)(ii).

6. Plaintiff requests relief from the retaliation by the Defendant for her exercising her Constitutional rights to due process and freedom of religion.

## PARTIES

7. Plaintiff was an employee for the Department of Education of the City of New York in good standing as a teacher since 2013. As such, she had protected liberty and property rights to her position as a tenured teacher. At all times relevant herein, Plaintiff was a public employee of Defendants within the meaning of New York State Civil Service Law § 75-b(1)(b).

8. At all relevant times, the Defendant has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and been and continues to be a recipient of substantial federal funds, and as such, is subject to the mandates under the Education Law, First and Fourteenth Amendments to the United States Constitution, which prohibits any diminution of tenure rights without Just Cause,

The headqvaters I worked it is in 65 Court street, Brooklym, NY 11201

3

and retaliation against individuals, such as Plaintiff herein. The headquarters of the
NYC DOE is located at 65 Court Street in Brooklyn, New York.

<strong><u>JURISDICTION AND VENUE</u></strong>

9.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 for claims
arising federal questions under 42 U.S.C. 1983, in particular the protections given by
the Free Exercise Clause, First and Fourteenth Amendments to the Constitution, as well
as State law claims codified in the New York State Constitution, and Education Law
§3020-a (the "tenure law") .

10. This action's venue properly lies in the United States District Court for the Eastern
District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the
New York City Department of Education is located at 65 Court Street in Brooklyn N.Y.
This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and
2202. This Court has supplemental jurisdiction over Plaintiff's state and city law claims
under 28 U.S.C. § 1367.

11. This Court has pendent and supplemental jurisdiction over Plaintiff's state law and
city law claims, as the facts that form the basis of the state and city law claims are
substantially similar to the facts that form the basis of the federal law claims.
Defendants were at all times acting under color of law in breaching their covenant of
good will and fair dealing with the Plaintiff as well as committing fraud in the
inducement.

12. Plaintiff filed a claim with the United States Equal Employment Opportunity
Commissioner ("EEOC") and received her Right to Sue Letter on July 7, 2023. *See,*
**Exhibit A,** a copy of the EEOC's Right To Sue Letter.

13. This Action was commenced prior to the expiration of the ninety (90) day window to file a claim pursuant to the Right to Sue Letter.

## STATEMENT OF FACTS

14. Plaintiff, a tenured teacher, was unlawfully denied support for freedom from abuse of process and malicious prosecution, stigma plus character defamation and diminution of her tenure rights due to her claiming a religious belief prohibiting her from getting the COVID Vaccine.

15. This Action seeks recovery for monetary damages – in particular the backpay, car days, pensionable time and other benefits - for the harm caused to Plaintiff's reputation, livelihood, and career; additionally for the distress, suffering, mental, emotional, and physical anguish, and impairment of Plaintiff's ability to secure future employment due to her placement in the Problem Code database, and impairment of earning power inflicted upon her due to the negligence, carelessness, recklessness, and misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendant.

16. Plaintiff was hired as a teacher by the Department in 2013.

17. Plaintiff earned tenure and all the Constitutional protections to her property and liberty rights pursuant to N.Y. Education Law.

18. Plaintiff has not become vaccinated with a COVID-19 vaccine.

19. On September 10, 2021 Defendant sent to Plaintiff an Impact Bargaining Agreement wherein Arbitrator Martin Scheinman created a new term of employment, a lawless Leave Without Pay ("LWOP") that involuntarily removed all Department employees from their jobs if they did not submit a COVID vaccination card to the

5

Department by October 4, 2021. In this Agreement between the UFT and Defendant, Scheinman also created a procedure to deny Appeals for religious exemptions that was unconstitutional. Judge Ralph Porzio in the case George Garvey et al., v City of New York et al.,, Index No. 85163/2022.

See **Exhibit B**, Scheinman Award Dated September 10, 2021; **Exhibit C** Scher Lawfirm letter re Scheinman's Award dated June 27, 2022; **Exhibit D** Scheinman's Award dated June 27, 2023.

20. Nonetheless, Plaintiff relied on the unconstitutional Scheinman ruling that discriminated against her religious beliefs because she wanted and needed to keep her job as a tenured teacher at the Department of Education. On September 19, 2021 Plaintiff applied for a religious exemption accommodation saying that she could not, and would not be able to get vaccinated due to her religious beliefs. Her beliefs are sincere and deeply held. **Exhibit E** Religious Exemption Request.

21. On September 20, 2021 Plaintiff received a denial of her Religious exemption accommodation. **Exhibit F** Denial of Religious Exemption Appeal

22. On September 21, 2022, Plaintiff applied an appeal and the Arbitrator notified her that she must attend a zoom hearing on September 24, 2022, with Ms. Sarah Miller Espinoza. Plaintiff submitted documentation to the arbitrator by sending to the COVID Vaccine Appeals email provided.

23. On September 24 the appeal hearing was held before Arbitrator Sarah Miller Espinoza, Esq., a member of Scheinman Arbitration and Mediation Services,

LLC.("SAMS"). During the arbitration hearing, Plaintiff read a statement, which included, but not limited to, her personal religious beliefs.

24. Plaintiff was told by Defendant's representative that the Department characterized her religious belief presented as personal, political, and philosophical, and thus was not considered a legitimate reason to approve an exemption. Plaintiff received a denial of the arbitration award in which that the requirement necessary to establish a religious exemption was not met.

25. On October 1, 2021, Plaintiff received notice that she could no longer enter the school building starting on October 4, 2021. She was placed on a Leave Without Pay ("LWOP") and could not work. On April 28, 2022 Plaintiff was told that her fingerprints were placed on the Department's "no-hire/inquiry"/"Problem Code" database the very same day. This Problem Code blocks her from getting any money as salary from the Department, and tags her file with misconduct. She is now guilty of insubordination, and suspended from pay without a due process hearing "3020-a" which is guaranteed to her by Law and contract (CBA, Article 21G). See **Exhibit G** Barry Black Declaration; **Exhibit H** Declaration of Betsy Combier with Exhibit A, email from Eric Amato.

26. On October 27, 2021, the Department removed Plaintiff from payroll.

27. On November 15, 2021, the United States Court of Appeals for the Second Circuit ordered fresh consideration of requests for religious accommodation saying

" Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law...... Accommodations will be considered for all sincerely held religious observances, practices, and beliefs."

28. In the Scher letter (Ex. C) Attorney Austin Graff cited Scheinman for violating

Plaintiff's rights (Plaintiff is named in the Broecker et al. v New York City

Department of Education et al lawsuit in this Court, Docket No. 21-CV-06387-

KAM-LB:

29. In Scheinman's June 27 Award (Ex. D)  Scheinman wrote:

 "... While the Department claims its action is unconnected with the Award, it is the
Award itself that created a new leave without pay. Absent the Award, the
Department was without the authority to remove these employees from the payroll
without providing a due process hearing.

Leave without pay is an unusual outcome. Yet, I decided it was appropriate for
employees whose requests for a medical or religious exemption were denied. This is
because such employees intentionally decided to disregard the mandate they be
vaccinated by September 27, 2021, the date established by Commissioner Chokshi
and Mayor de Blasio."

Graff adds:

"First, Scheinman's words establish that but-for the Award, the NYCDOE could not
have placed the Plaintiffs on leave without pay. As Plaintiffs argued in opposition to
the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law §
209.3.(f) and the numerous cases that have interpreted the statute, including a case
from the New York Court of Appeals and numerous opinions issued by PERB.
Therefore, if the Court finds that the Award violated N.Y. Civil Service Law §
209.3.(f), as the Plaintiffs argue, then the NYCDOE did not have any authority to
place the Plaintiffs on leave without pay without due process, thereby violating the
Plaintiffs' due process rights. Scheinman's words are additional evidence that the
Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42
U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the
Award. Scheinman establishes, by his own words, that he actively participated in
the violation of the Plaintiffs' due process rights by "creat[ing] a new leave without
pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract
or acted like an umpire in a dispute between the NYCDOE and the United
Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman
admits, but-for his Award, "the Department was without the authority to remove
these employees from the payroll without providing a due process hearing.....
admitting that his actions caused the Plaintiffs to "suffer[] a denial of [their] federal
statutory rights, or [their] constitutional rights or privileges." Annis v. County of
Westchester, 136 F.3d 239,245 (2d Cir. 1998)."

30. On November 19, 2021, Plaintiff applied for a Religious Exemption to the Citywide Panel comprised of unnamed representatives from the Commission of Human Rights, the Department of Citywide Administrative Services, and the Office of the Corporation Counsel. Plaintiff re-submitted a religious exemption request on appeal through the Department's SOLAS system.

31. On November 28, the United States Court of Appeals for the Second Circuit merit panel concluded "It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings." It also reaffirmed that a fresh consideration of people's request for religious accommodation was required.. They wrote, "In addition to the First Amendment such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law."

32. On December 3rd, 2021, Defendant's Human Resources confirmed receipt of Plaintiff's appeal of her application materials and documentation. Her documents were forward to the Citywide Panel.

33. On, January 7th, 2022, Plaintiff received an email from Defendant's Division of Human Resources requesting to provide the additional information such as:

- Whether you have previously taken any vaccinations;

9

- If you have stated that you have a personal religious aversion to foreign or other impermissible substances entering your body, please describe this with more clarity, including describing any other commonly used medicines, food/drink and other substances you consider foreign/impermissible or that violate your religious belief;

- If you have stated that you cannot take the vaccine because of an objection to using derivative fetal cells in the development of a vaccine, please provide more information about your stated objection and whether there are other medications or vaccinations that you do not take because of this objection;

- Any additional occasions you have acted in accordance with the cited belief outside the context of a COVID-19 vaccination, to the extent not previously described in the documentation already submitted.

34. On February 15th, 2022, Plaintiff received an email from the NYC Employee

Vaccine Appeals (                                    ) telling her that they denied her re-appeal:

"The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request....The decision classification for your appeal is as follows: DOE has demonstrated that it would be an undue hardship to grant this accommodation to appellant given the need for a safe environment for in person learning."

35. On March 2lst, 2022, Plaintiff received a termination notice from the Department's

Division of Human Resources stating that she was terminated on March 17th, 2022 from

my teaching position by the City of New York City Department of Education.

36. All Plaintiff's rights under the Constitution, both Federal and State, city and State

Human Rights Laws, NYS Administrative Code, as well as employment rights under

the Collective Bargaining Agreements between the UFT and the DOE have been

violated, in particular, subjecting Plaintiff to a hostile workplace environment and

wrongful termination without probable or just cause and without a Constitutionally

protected due process 3020-a hearing solely because of her religious beliefs and the

fraudulent inducement by the Defendant to choose to relinquish her beliefs in order to submit to an experimental vaccine.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR RELIGIOUS DISCRIMINATION

37.Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 36 as if the same were fully set forth at length herein.

38. Plaintiff has sincerely held religious beliefs which forbid her from getting vaccinated with the COVID-19 vaccine. See **Exhibit A, E**.

39. Defendant had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

"The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. …..
What is most important is that "undue hardship" in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an employer's business in the commonsense manner that it would use in applying any such test….. Further, a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue." Bias or hostility to a religious practice or accommodation cannot supply a defense."

40. Based on the foregoing, Defendant subjected Plaintiff to discrimination on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

**AS AND FOR A SECOND CAUSE OF ACTION FOR FAILURE TO
REASONABLY ACCOMMODATE THE PLAINTIFF'S SINCERELY HELD
RELIGIOUS BELIEFS**

41. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 40 as if the same were fully set forth at length herein.

42. Plaintiff has sincerely held religious beliefs which forbid her from getting vaccinated with the COVID-19 vaccine. See **Exhibit A, E**.

43. Defendant, the Plaintiff's employer, had actual knowledge of the Plaintiff's sincerely held religious beliefs.

44. Defendant had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023.

45. No reasonable accommodation was offered to the Plaintiff.

46. In conflict with the U.S. and City Constitutions guaranteeing all citizens the    right to their religious beliefs, Defendant did not honor this law of the land and terminated Plaintiff without any interactive process to discover any reasonable accommodation. See **Exhibits A, B, C, E, F.**

47. In Garvey v City of NY Index no. 85163/2022, Judge Ralph Porzio wrote in his decision:

"Petitioners – all but one – applied for exemptions from the mandate. They received generalized and vague denials. During that time their exemptions were being processed, they remained unvaccinated. There was no reason that they could not

12

continue to submit to testing and continue to fulfill their duties as public employees. There was no reason why the City of New York could not continue with a vaccine or test policy, like the Mayor's Executive Order that was issued in August 2021......" and,

"Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance....The Health Commissioner cannot create a new condition of employment for City employees. The Mayor

. Executive Order 62 renders all of these vaccine mandates arbitrary and capricious....prohibit an employee from reporting to work."

48. Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

### AS AND FOR A THIRD CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT TO DENY PLAINTIFF HER PROPERTY AND LIBERTY RIGHTS TO A DUE PROCESS HEARING AS A TENURED TEACHER MANDATED BY EDUCATION LAW 3020 AND 3020-A

49. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 48 as if the same were fully set forth at length herein.

50. Plaintiff was punished with wrongfully being terminated for her "insubordination" in not getting vaccinated with the COVID vaccine.

51.Education Law Section 3020 , Chapter 16, Title 4, Article 61 states as follows:

"Discipline of teachers. 1. No person enjoying the benefits of
tenure shall be disciplined or removed during a term of employment
except for just cause and in accordance with the procedures specified in
section three thousand twenty-a of this article"
and,

"2. No person enjoying the benefits of tenure shall be suspended for a
fixed time without pay or dismissed due to a violation of article
thirteen-E of the public health law….. (iii) the provisions of
subdivisions one and two of this section shall not apply to agreements
negotiated pursuant to this subdivision…"

52. Plaintiff did not, at any time, waive her rights to a 3020-a hearing on her

religious exemption request. She wanted her due process to be honored. Instead,

she was declared insubordinate by the Department, her personnel file was

flagged and her fingerprints tagged with a with a "Problem Code" designating

misconduct and put into the same database used by the FBI.

53. The United States Supreme Court has defined waiver as "an intentional

relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U.

S. 458, 464 (1938). Courts should "indulge every reasonable presumption against

waiver,  Aetna Ins. Co. v. Kennedy, 301 U. S. 389, 393 (1937), and they should "not

presume acquiescence 526*526 in the loss of fundamental rights," Ohio Bell Tel.

Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937). In Carnley v. Cochran, 369

U. S. 506 (1962), the Court held:

"Presuming waiver from a silent record is impermissible. The record must show, or
there must be an allegation and evidence which show, that an accused was offered
counsel but intelligently and understandably rejected the offer. Anything less is not
waiver." Id., at 516.

54. Additionally, a waiver of a teacher's tenure rights must be knowingly and freely

given (Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al., 81 NY2d

446; Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1, 46 NY2d

450).

55. Tenured teachers have a property and liberty right to their jobs, and therefore when

there is any penalty that reduces the benefits of these rights, there must be Just Cause.

Judge Desmond Green in the Richmond County Supreme Court ruled in the case of

Rosalie Cardinale that:

"New York State created the public school tenure system guaranteeing continued
employment to tenured teachers by statute and therefore created a property right in a
tenured teacher's continued employment. *(See Education Law§§§* 3012, 3012- a, 3020,
*Holt v. Board of Educ. Of Webutuck Cent. School Dist.,* 52 NY2d 625 [1981], *Matter of
Abromvich v. Board of Educ. of Cent. School Dist. No. I of Towns of Brookhaven &
Smithtown,* 46 NY2d 450 [1979]). Where a property right in continued employment
exists, such as New York's tenure system, the recipient of such a right may not be
deprived without due process. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532,
538 [1985].

New York State guarantees a tenured teacher's due process rights to continued
employment by statute requiring that "no [tenured teacher] ... shall be disciplined or
removed during a term of employment except for just cause and in accordance with the
procedures specified in section three thousand twenty-a of this article or in accordance
with alternate disciplinary procedures contained in a collective bargaining agreement ...
" *Education Law* § 3020.

56. The legislative intent is to provide pedagogues protection from vindictive principals

who may want to remove senior teachers from their positions for random, arbitrary or

capricious reasons.  Thus, Education Law 3020-a(2)(a) is an important part of the

efforts of legislators to maintain a check and balance of power in NY State governance

and policy. See Kambouris et al., v New York City Department of Education of the City

of New York, et al. Index No. 518863/2022 (Decision/Order dated 1/05/2023)

57. Based on the foregoing, the NYCDOE failed to provide a reasonable

accommodation and as a result, discriminated against the Plaintiff on the basis of her

religion, unlawfully discriminating against the Plaintiff in the terms and conditions of

her employment on the basis of her religion, in violation of Education Law §3020, §3020-a, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

**WHEREFORE,** the Plaintiff demands judgement against the Defendant for all compensatory, emotional, psychological and punitive damages, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1. Awarding Plaintiff her tenured position and salary given to her before October 2021, in full, with benefits; and

2. Awarding Plaintiff all the backpay and financial damages that ensued after she was placed on a lawless and unconstitutional Leave Without Pay.

3. Granting such other and further relief that the Court seems just and proper.

Dated: October 5, 2023

Maria Ruscelli
2550 Independence Avenue, Apt 3M
Bronx, N.Y. 10463
917-805-1232

# Exhibit A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5ᵗʰ Floor
New York, NY 10004-2112
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
New York Direct Dial: (929) 506-5270
FAX (212) 336-3625
Website:

**EMAIL DELIVERY**

*Maria Ruscelli*
*2550 Independence Ave., 3M*
*Spuyten Duyvil, New York 10463*
*Mariaruscelli@yahoo.com*

*Re. EEOC Charge: 520-2022-00320*

Dear Ms. Ruscelli:

The Equal Employment Opportunity Commission ("Commission") has concluded its inquiry/investigation into your allegations of discrimination contained in the above-referenced charge. Under Commission procedures, we focus our resources only on those charges that are most likely to result in findings of violations of the laws we enforce.  In accordance with these procedures, the Commission has evaluated your charge based on the evidence provided.

You allege that the ***New York City Department of Education*** discriminated against you because of your religion in that it failed to provide an accommodation based on your sincere religious belief, all in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII).

Title VII requires an employer to provide a job accommodation to an individual with a sincerely held religious belief that would relieve employees of the burden of choosing between their jobs and their religious convictions. Under Title VII, however, the employer is not required to provide a requested accommodation if it would result in more than a minimal hardship to the employer. Courts have found more than a minimal hardship where the requested accommodation impairs workplace safety [e.g., spread of COVID -19], or cause co-workers to carry the accommodated employee's share of potentially hazardous or burdensome work. A requested accommodation that conflicts with another law would also be considered more than a minimal hardship for the employer. Under Title VII, the EEOC must also consider other factors including: the assessment of the public risk posed at a particular time; the availability of effective alternative means of infection control; and the number of employees who actually request accommodations.

Based upon the information submitted during the investigation, the Commission is unable to conclude that the evidence establishes a violation of Title VII.  The Respondent has successfully illustrated that the granting of your requested accommodation would have been more than a minimal hardship under the circumstances. This does not certify that the Respondent is in compliance with statutes.  No finding is made as to any other issue that might be construed as having been raised by this charge. The EEOC's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue. Following this dismissal, you may only pursue this matter by filing suit against the Respondent within ninety (90) days of

receipt of this notice. Otherwise, your right to sue will be lost. If you have any questions, *please contact Investigator Glendora Young at (929) 506-5290.*

Sincerely,

*Glendora Young*
EEOC Investigator

7/7/2023
Date

# Exhibit B

Mail - Ruscelli Maria - Outlook

## Reasonable Accommodation Appeal Determination

noreply@salesforce.com <noreply@salesforce.com>
on behalf of
NYC Employee Vaccine Appeals <vaxappeal@dcas.nyc.gov>
Mon 3/7/2022 3:57 PM

To: Ruscelli Maria <MRuscelli@schools.nyc.gov>

The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request.

The decision classification for your appeal is as follows: DOE has demonstrated that it would be an undue hardship to grant this accommodation to the employee given the need for a safe environment for in-person learning.

**For all employees other than DOE employees:** Pursuant to the City of New York's policy concerning the vaccine mandate, you now have **three business days** from the date of this notice to submit proof of vaccination. If you do not do so, you will be placed on a leave without pay (LWOP).

**For Department of Education (DOE) employees:** Pursuant to New York City Department of Education policy, you have seven calendar days to extend your Leave Without Pay or return to work. If you do neither, you will be subject to termination. For further information and instructions, please see DOE Denial of Appeal Information.

# Exhibit C

# THE SCHER LAW FIRM, LLP

### ONE OLD COUNTRY ROAD, SUITE 385
### CARLE PLACE, NY 11514

MARTIN H SCHER*

JONATHAN L SCHER**

AUSTIN R GRAFF*

* Also Admitted in District of Columbia
· Also Admitted in New Jersey

TEL 516-746-5040

FAX 516-746-5043

July 7, 2022

W SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S NAYBERG

**BY FEDERAL EXPRESS AIRBILL NO. 777327941330
AND BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     Broecker, *et al.* v. New York City Department of Education, *et al.*
        Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

This law firm represents the Plaintiffs in the above-referenced Action. The Plaintiffs request permission to supplement their opposition to the Motions to Dismiss based upon new documentary evidence obtained yesterday contained in the filing with the New York State Supreme Court, County of New York in a newly filed litigation entitled *In the Matter of the Application of the Board of Education of the City School District of the City of New York, et al. v. United Federation of Teachers, Local 2, AFT, AFL-CIO, et al.* under Index Number 451995/2022 ("DOE Proceeding"), regarding a dispute over a new arbitration decision by the Defendant Martin Scheinman ("Scheinman") materially and relevant to the pending Motions to Dismiss.

The *New York Post* reported yesterday on the DOE Proceeding which challenges Scheinman's Opinion and Award relating to 82 NYCDOE employees placed on leave without pay by the New York City Department of Education ("NYCDOE") for filing allegedly false vaccine cards. *See*, **Exhibit A**, a copy of the *New York Post* article.

Through due diligence, we were able to find the NYCDOE's filings in the DOE Proceeding, which included the new Opinion and Award issued by Scheinman that directly relates to the pending Motions to Dismiss in the above-referenced Action.

# THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 2 of 3

In Scheinman's newest Opinion and Award (**Exhibit B** ("Opinion and Award")), Scheinman states with respect to the UFT Arbitration Award ("Award"):

> ... While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.

> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

**Exhibit B**, at page 10.

This language, written by Scheinman in the Opinion and Award supports three arguments previously made by the Plaintiffs in opposition to the Motions to Dismiss:

First, Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiffs on leave without pay. As Plaintiffs argued in opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law § 209.3.(f) and the numerous cases that have interpreted the statute, including a case from the New York Court of Appeals and numerous opinions issued by PERB. Therefore, if the Court finds that the Award violated N.Y. Civil Service Law § 209.3.(f), as the Plaintiffs argue, then the NYCDOE did not have any authority to place the Plaintiffs on leave without pay without due process, thereby violating the Plaintiffs' due process rights. Scheinman's words are additional evidence that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinman establishes, by his own words, that he actively participated in the violation of the Plaintiffs' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing." **Exhibit B**,

# The Scher Law Firm, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 3 of 3

at page 10. Scheinman's own words establish that the Plaintiffs have stated a plausible claim for a violation of 42 U.S.C. § 1983 against the NYCDOE and Scheinman because as he admits, without his Award, the NYCDOE would have had to provide the Plaintiffs with due process before placing them on leave without pay, admitting that his actions caused the Plaintiffs to "suffer[ ] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Accordingly, the Scheinman Defendants' Motion to Dismiss must be denied.

Third, Scheinman confirms that it was him who "decided [leave without pay] was appropriate", which means that the NYCDOE and the UFT did not "continu[e] to negotiate until an 'agreement' [was] reached" but instead the resolution of the NYCDOE's and UFT's impasse was imposed by Scheinman in violation of N.Y. Civil Service Law § 209.3.(f). *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560 (2016). Scheinman's words confirm that the Award was a newly created and imposed remedy to the school district's impasse in negotiations with its union and therefore violated clear and unambiguous statutory language requiring a school district, like the NYCDOE, and its union, like the UFT, to overcome any impasse at the bargaining table and not through any other means. As a result, Scheinman's words support the Plaintiffs' argument that they have a plausible claim that the Award was promulgated and instituted without any statutory authority.

*******************

The Plaintiffs thank the Court for its courtesies in accepting the Plaintiffs' supplemental filing, considering the Opinion and Award only came into the Plaintiffs' possession yesterday and the Plaintiffs believed, as shown above, that the Opinion and Award is material and relevant to the pending Motions to Dismiss.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

H:\Martino, Michelle\Teacher Litigation\Motions\Motion # 002 - Motions to Dismiss\Opposition to the Motions\July 2022 Supplemental Letter 7-7-2022 letter to Court re Scheinman award.doc

# Exhibit D



June 27, 2022

<u>**Via E-Mail Only**</u>
Liz Vladeck, Esq.
New York City Department of Education
Office of the General Counsel
52 Chambers Street, Room 308
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Michael Mulgrew, President
Beth Norton, Esq.
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

Re:   **Board of Education of the City School District of the City of New York
      and
      United Federation of Teachers, Local 2, AFT, AFL-CIO
      (Proof of Vaccination)**

Dear Counsel:

     Enclosed please find my Opinion and Award in the above referenced matter.

     I have also enclosed my bill for services rendered.

     Thank you.

Sincerely,

Martin F. Scheinman

MFS/sk
NYCDOE.UFT.proof of vaccination.trans

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM INDEX NO. 155920/2022

NYSCEF DOC. NO. 33    Case 1:33-cv-07475-AMD-LB   Document 1   Filed 10/05/23   Page 28 of 62 PageID #: 28    RECEIVED NYSCEF: 07/01/2022

```
------------------------------------  X
In the Matter of the Arbitration
                                      X
        between
                                      X    Re: Proof of
BOARD OF EDUCATION OF THE CITY             Vaccination
SCHOOL DISTRICT OF THE CITY OF        X
NEW YORK
                                      X
        "Department"
                                      X
        -and-
                                      X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO                 X

        "Union"                       X

------------------------------------  X
```

**APPEARANCES**

    **For the Department**
      Liz Vladeck, General Counsel


    **For the Union**
    STROOCK & STROOCK & LAVAN, L.L.P.
      Alan M. Klinger, Esq.

      Beth Norton, Esq., UFT General Counsel
      Michael Mulgrew, UFT President


**BEFORE**:  Martin F. Scheinman, Esq., Arbitrator

[FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM]

NYSCEF DOC. NO. 133 Case 1:33-cv-07475-AMD-LB    Document 1    Filed 10/05/23    Page 29 of 62 PageID #: 29    RECEIVED NYSCEF: 07/01/2022

## BACKGROUND

The Union protests the Department's decision to summarily place approximately eighty two (82) Department employees on leave without pay, with benefits, effective April 25, 2022. This action was based upon information the Department received from a separate investigative agency these employees' proof of COVID-19 vaccination was allegedly fraudulent. The Union contends the issue of whether the Department's action is proper and falls within the scope of my September 10, 2021, Award ("Award").

Most of the basic facts are not in dispute.

In July 2021, former Mayor de Blasio announced a "Vaccine-or-Test" mandate which required the City workforce, including the educators, to either be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021. Thereafter, on August 23, 2021, Mayor de Blasio and the New York City Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in Department buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto Department premises, would not be paid for work and would be at risk of loss of job and benefits.

2

Case 1:33-cv-07475-AMD-LB   Document 1   Filed 10/05/23   Page 30 of 62 PageID #: 30

This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021. That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

The Union promptly sought to bargain the impact and implementation of the Vaccine Only mandate. The parties had a number of discussions, but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The Department did not challenge the statement of impasse and PERB appointed me to mediate the matters. Mediation sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.

Arbitration sessions were then held. On September 10, 2021, I issued an Award which set forth a detailed procedure to be followed in the cases of employees who sought an exemption to the Vaccination Mandate based on a medical condition or religious reasons.

3

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM

NYSCEF DOC. NO. 133 Case 1:33-cv-07475-AMD-LB Document 1 Filed 10/05/23 Page 31 of 62 PageID #: 31 RECEIVED NYSCEF: 07/01/2022

In accordance with the procedure set forth in my Award, employee requests for an exemption were initially submitted to the Department along with any supporting documentation. An employee wishing to appeal an adverse determination by the Department was given the opportunity to appear at a hearing before an impartial arbitrator who was authorized to render a final and binding decision. Approximately five hundred (500) appeals were determined by the arbitration process. Pending the arbitrator's decision, the employee could not be removed from the payroll.

On April 19, 2022, the Department informed approximately eight two (82) employees they were being placed on leave without pay, with benefits, effective April 25, 2022, based on allegations their proof of COVID-19 vaccination was fraudulent. The employees were told they could contact the Department if they believed the allegation they submitted fraudulent proof of vaccination was wrong. On April 21, 2022, the Union wrote the Department and demanded it rescind its decision to remove these employees from the payroll without the benefit of a due process hearing.

By letter dated April 22, 2022, the Department set forth its position placement of these employees on a leave without pay status did not constitute discipline, and, therefore, did not implicate the disciplinary procedures set forth in the Education Law or the parties' Collective Bargaining Agreement ("Agreement").

4

Thereafter, by letter dated May 3, 2022, the Union wrote to me requesting I take jurisdiction over this dispute. The Union cited to that portion of the Award which states "should either party have reason to believe the process set forth herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution".

By letter dated May 4, 2022, the Department wrote in opposition to the Union's May 3, 2022, letter. The Department stated it was in full compliance with my Award, as well as the Agreement and applicable law. The Department also insisted this matter was not properly before me.

On May 4, 2022, I conducted a conference call with the parties. At that time, each side was given the opportunity to argue their positions.

Thereafter, on May 6, 2022, the Union submitted further argument in support of its position. The Department responded in a letter dated May 10, 2022.

Upon my receipt of the parties' written submissions, I closed the record.

### DISCUSSION AND FINDINGS

**The Issues:**

The basic issues to be decided are as follows:

5

1. Is the Department's decision to place the approximately eighty two (82) employees on leave without pay, with benefits, subject to my jurisdiction pursuant to the September 10, 2021, Award?

2. If so, what shall be the remedy?

## Position of the Parties

The Department insists the facts of circumstances regarding its placement of the eighty two (82) employees on leave without pay, with benefits, is not within my jurisdiction pursuant to the Award. According to the Department, the Award sets forth an expedited process to review Department employees' requests for exemptions and accommodations from the August 21, 2021, mandate to submit proof of COVID-19 vaccination by September 29, 2021. The Department maintains the requests for an exemption or accommodation were limited to medical and religious grounds. It contends no other issue is covered by the Award.

The Department contends it placed the employees on a leave without pay status as a result of the Department's receipt of information from a law enforcement agency the employees in question submitted fraudulent proof of vaccination in order to comply with Commissioner Chokshi's order which required vaccination of all Department staff.

According to the Department, the Courts have held compliance with the Commissioner Chokshi's Order is a "condition of

6

employment". The Department maintains this situation is no
different to the Department's unilateral action against an
employee who is not certified. As such, the Department maintains
placing employees on leave without pay for failing to comply with
the Commissioner Chokshi's Order comports with applicable due
process procedures as long as notice is given, and the employee
has an opportunity to respond. In support of its position the
Department cites Broecker v. N.Y. Dep't of Educ., 21-CV-6387,
2022 WL 426113 at *7-8 (E.D.N.Y. Feb. 11, 2022); and N.Y. City
Mun. Labor Comm. V. City of New York, 151169/2022 (Sup. Ct. N.Y.
County Apr. 21, 2022).

The Department argues employees who are identified in
connection with a law enforcement investigation into the
submission of fraudulent vaccination cards are outside the scope
of the Award. Furthermore, the Department insists the Award's
reference to a party's failure to implement the process does not
apply to the facts and circumstances presented, here. According
to the Department, the language relied upon by the Union refers
specifically to the "administrative process for the review and
determination of requests for religious and medical exemptions to
the mandatory vaccination policy and accommodation requests where
the requested accommodation is the employee not appear at school".
The Department asserts since that process is not at issue, here,
the Union's claim is misplaced.

7

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM

NYSCEF DOC. NO. 133    Case 1:33-cv-07475-AMD-LB   Document 1   Filed 10/05/23   Page 35 of 62 PageID #: 35    RECEIVED NYSCEF: 07/01/2022

For the reasons set forth above, the Department contends the Union's request for relief pursuant to the Award must be denied.

The Union, on the other hand, argues the Department's decision to place these employees on leave without pay, with benefits, is predicated on the Award.  It insists this matter is subject to my continued jurisdiction.  The Union asserts the Agreement prohibits an employee from being removed from the payroll without establishing probable cause in a due process hearing. [1]

The Union maintains the Department's contention this situation is akin to the removal of an uncertified employee is misplaced.  According to the Union, approval of certification is issued by the State.  In addition, the Union insists an employee is either certified by the State or is not, there is no underlying question of fact to be determined.  The Union asserts if an employee proves they have completed all of the necessary paperwork, but they are not yet certified, they will not be terminated.

The Union urges in this instance 'the Department made a unilateral decision to place the employees on leave, without pay, based solely on a communication from another agency the employees were not vaccinated.  The Union contends the Department has no direct knowledge of whether that assertion is true or false.

---

[1] There are limited exceptions to this procedure which are inapposite.

8

According to the Union, the Department removed the employees from the payroll and subsequently allowed them to provide additional evidence they are vaccinated. The Union maintains as of May 6, 2022, employees who have contacted the Department asserting they have been placed on leave without pay in error have not received any response, yet they remain suspended without pay.

The Union asserts the only authority for the Department to place employees on leave without pay, with benefits, is the Award. It contends the Department is improperly invoking the Award, and the action cannot be taken until the dispute concerning their vaccination status is determined through the Award's stated process.

In short, the Union argues the Department's unilateral decision to place employees on leave without pay, with benefits, based on the communication from another agency the employees are not vaccinated falls within the jurisdiction of the Award.

## Opinion

Certain preliminary comments are appropriate. As an arbitrator my role is a limited one. In order for me to determine whether I can assert jurisdiction over the Department's actions as alleged by the Union, I am limited by the language of the Award. If the Award is clear, I must enforce it according to its plain meaning.

9

With these principles in mind, I turn to the facts presented.

I find I have jurisdiction to consider this matter. While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.

Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

Implicit in such a designation of leave without pay is the individual failed to comply with the vaccine mandate. Here, there is a dispute whether the employees did or did not comply. Without that being assessed, or at least submitting evidence to show a high likelihood of non-compliance, the predicate for placing an employee on leave without pay does not exist.

The Department's decision to automatically place these employees on leave without pay is inconsistent with the language and underpinnings of my Award. Nothing in the Award grants the Department such use of leave without pay status.

Based upon the above, I find the Department failed to properly implement the due process protections of my Award. The Union has the right to assert the Department's process "is not implemented in good faith." To be clear, nothing in my Award was intended to abrogate any due process rights the parties otherwise maintained with regard to employment status.

I also disagree with the Department's position the court decisions it cites support the removal of these employees from pay status without a hearing. Those court decisions confronted an entirely different factual scenario. Unlike this matter, in those cited cases, there was no claim the employees at issue were vaccinated.

In denying the request for a preliminary injunction, Justice Kim, in NYC Municipal Labor Committee, supra., specifically found the absence of that factual issue in her determination. Here, of course, the employees assert they are in fact vaccinated. This raises a factual issue that is ripe for adjudication pursuant to my Award.

Based on the reasons set forth above, I take jurisdiction over the Department's placement of the approximately eighty two (82) employees placed on leave without pay, with benefits. The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an

11

employee's claim they have submitted proof of vaccination. If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

FILED: NEW YORK COUNTY CLERK 07/01/2022 01:35 PM

NYSCEF DOC. NO. 133 Case 1:33-cv-07475-AMD-LB   Document 1   Filed 10/05/23   Page 40 of 62 PageID #: 40  RECEIVED NYSCEF: 07/01/2022

## AWARD

1.  Pursuant to Section 1L of my Award dated September 10, 2021, I shall assume jurisdiction over the Department's decision to place eighty two (82) employees on leave without pay, with benefits, effective April 25, 2022.

2.  The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an employee's claim they have submitted proof of vaccination.  If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NASSAU     )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.CHIARA.HARASHIAN.AWD

13

# Exhibit E

**Reason for Appeal.**                 **Sent through Solas Sytem**                 **September 19, 2021**

 I Maria Ruscelli, am exercising my right to receive a religious exemption for vaccination. First and foremost, the vaccines I oppose include the current COVID-19 mRNA vaccines and the Jansen vaccine which are produced with aborted fetal cell lines. The Johnson & Johnson vaccine, the Jansen vaccine, uses retinal cells from a fetus that was aborted in 1985 and treated in a lab since; the Pfizer and Moderna vaccines test the mRNAs on fetal cell lines from an aborted fetus cell from 1973.1 Therefore as a faithful Christian, I cannot according to the Church tenets on conscience which are outlined below, use any product that takes its origin in abortion. "For you created my inmost being You knit me together in my mother's womb." Psalm 139:13. The inmost being is sacrosanct. Defiling of the body, many Christians, including me, believe as 2 Corinthians 7 teaches, that we should "cleanse ourselves from every impurity of flesh and spirit." The way I practice my religion includes aligning myself with scriptures on issues that oppose the wisdom of the world. What the world considers a type of remedy, a privilege, and something to covet in 2021 but is something I consider an impurity, I do not believe that using fetal cells from an aborted fetus for the benefit of the greater good or my personal benefit can be reconciled. I will not knowingly participate in the process to use such a product that violates the right to life and dishonors the lives of the unborn. The scriptures are very specific about how those who practice Christianity should navigate life. Ephesians 6:10-18 directs us to "put on the armor of God," so that we can be equipped with truth, righteousness, peace and faith.

Having formally notified the New York City Department of Education of the conflict between the COVID-19 vaccination requirement and my religious beliefs, I look forward to receiving in a prompt and timely manner your decision on what accommodation you will provide. Failing that, I reserve my right to pursue legal remedies available to me with the Equal Employment Opportunity Commission or otherwise in accordance with established law.

Sincerely yours,

Maria Ruscelli, Ms. Ed

Bilingual Special Education Teacher

# Exhibit F

SCHEINMAN ARBITRATION AND MEDIATION SERVICES

-------------------------------------------- X

In the Matter of the Arbitration

                                         X

               between

                                           X

NEW YORK CITY DEPARTMENT OF EDUCATION            Re:UFT.687

                                           X

             and

                                           X

               Maria Ruscelli                        X

-------------------------------------------- X


Issue:     Religious Exemption


Date of Hearing: September 24, 2021

## Award

APPLICATION FOR EXEMPTION: GRANTED [ ]     DENIED [ x]    OTHER [ ]


The requirements necessary to establish a religious exemption were not met. Of note, the Pfizer and Moderna vaccines do not use fetal cell lines for vaccine production and manufacturing and do not contain any animal byproducts or preservatives.


*Say M Eyer*

                                       September 24, 2021

_____          _____

**Arbitrator**                                    **Date**

**From:** Division of Human Capital <DHC@schools.nyc.gov>
**Subject:** New Appeal Option for Religious Exemption to the COVID-19 Vaccine Mandate
**Date:** November 19, 2021 at 5:39:14 PM EST

Dear Colleague,

According to our records, you appealed a denial of a religious exemption to the COVID-19 vaccine mandate and that appeal was not granted by the third-party arbitrator. As you may be aware, other City employees now have an option to appeal a religious exemption denial by their agency to a central Citywide Panel.  Based on your status, you now have an opportunity to also appeal to this Citywide Panel.

Please note the following about this new appeal option:

- Your request will be considered by a central Citywide Panel comprised of representatives of the Commission on Human Rights, the Department of Citywide Administrative Services, and the Office of the Corporation Counsel. The determination will be made by the panel according to the standards imposed by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law.

- To submit this appeal, you will use SOLAS, as you have before.  Specific login instructions are below.  There is no need to re-submit any materials you already included in your original application or in SOLAS as part of your appeal to the arbitrator, however, you may submit new documentation when you submit this appeal in SOLAS. Note that documentation from a religious official is not required but you are free to submit it.

- To be considered by the Citywide Appeal, you must submit the appeal via SOLAS by no later than 11:59 pm on Friday, December 3, 2021.

- While your new appeal is pending you will remain on Leave Without Pay status. However, the deadline to apply for the extension of your Leave Without Pay will be extended until seven calendar days after your new appeal is resolved.

- If you opted for the special provisions separation, you still may re-appeal. If your new appeal is approved, then you will be given a choice to be reinstated.

To make an appeal using this procedure:

**Your Appeal**

**solas_donotreply@schools.nyc.gov <solas_donotreply@schools.nyc.gov>**
Fri 12/3/2021 4:47 PM
To: Ruscelli Maria <MRuscelli@schools.nyc.gov>

12/03/2021

Case#: A74944
File# 0867351
EMP ID: 1156344

Dear MARIA RUSCELLI,

This notification confirms the receipt of your appeal of your denial of a COVID-19 vaccine mandate related exemption. This appeal and your application materials and documentation are being forwarded to the Citywide Panel.

Sincerely,

*HR Connect*
Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

Ref Number : GX5113595 N3452 COVID-19 Appeal CWP

Mail - Ruscelli Maria - Outlook

# *Your Appeal to the Citywide Panel - Additional Information*

**Division of Human Resources <DHR@schools.nyc.gov>**
Fri 1/7/2022 7:06 PM
Colleague,

Your appeal of your religious exemption to the COVID-19 vaccine mandate has been submitted to the Citywide Appeal Panel. To assist the Citywide Appeal Panel in reviewing your religious exemption request, please provide the following additional information by Friday, January 14, 2022 at 8:00 pm:

1. Whether you have previously taken any vaccinations.
2. If you have stated that you have a personal religious aversion to foreign or other impermissible substances entering your body, please describe this with more clarity, including describing any other commonly used medicines, food/drink and other substances you consider foreign/impermissible or that violate your religious belief.
3. If you have stated that you cannot take the vaccine because of an objection to using derivative fetal cells in the development of a vaccine, please provide more information about your stated objection and whether there are other medications or vaccinations that you do not take because of this objection.
4. Any additional occasions you have acted in accordance with the cited belief outside the context of a COVID-19 vaccination, to the extent not previously described in the documentation already submitted.

To submit this information, please follow the steps below:
- Written responses should be sent in as an attached document to PanelAppealUpdate@schools.nyc.gov (*Do not send, copy, or reply to this email.*)
- Written responses must be received by email by Friday, January 14, 2022 at 8:00 pm
- Only attach new information/document - do not resend documentation that was already provided.
- Include your Name and Employee ID number in the subject line of your email.

If additional information is not provided, the Panel will consider your appeal based on the materials/information you already submitted through SOLAS.

Thank you,

NYCDOE Division of Human Resources

## Reasonable Accommodation Appeal Determination

noreply@salesforce.com <noreply@salesforce.com>
on behalf of
NYC Employee Vaccine Appeals <vaxappeal@dcas.nyc.gov>
Mon 3/7/2022 3:57 PM
To: Ruscelli Maria <MRuscelli@schools.nyc.gov>

The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request.

The decision classification for your appeal is as follows: DOE has demonstrated that it would be an undue hardship to grant this accommodation to the employee given the need for a safe environment for in-person learning.

**For all employees other than DOE employees:** Pursuant to the City of New York's policy concerning the vaccine mandate, you now have **three business days** from the date of this notice to submit proof of vaccination. If you do not do so, you will be placed on a leave without pay (LWOP).

**For Department of Education (DOE) employees:** Pursuant to New York City Department of Education policy, you have seven calendar days to extend your Leave Without Pay or return to work. If you do neither, you will be subject to termination. For further information and instructions, please see DOE Denial of Appeal Information.

# Exhibit G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                    :
MICHAEL KANE, et al.,                                               :
                                                                    :
                                    Plaintiffs,                     :
                                                                    :
                    - against -                                     :       Case No.  21-cv-7863 (VEC) (Lead)
                                                                    :
BILL DE BLASIO, et al.,                                             :
                                                                    :
                                    Defendants.                     :
-------------------------------------------------------------------X
                                                                    :
MATTHEW KEIL, et al.                                                :
                                                                    :
                                    Plaintiffs,                     :
                                                                    :
                    - against -                                     :       Case No.  21-cv-8773 (VEC)
                                                                    :
THE CITY OF NEW YORK, et al.,                                       :
                                                                    :
                                    Defendants.                     :
-------------------------------------------------------------------X

## DECLARATION OF BARRY BLACK IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**BARRY BLACK**, an attorney admitted to practice before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

1. I am an attorney for Plaintiffs and fully familiar with the facts and circumstances of this case.

2. I respectfully submit this declaration in response to Mallory O. Sullivan's Declaration.

3. Attached as Exhibit 1 is a true and correct copy of a declaration from Betsy Combier.

4. Attached as Exhibit 2 is a true and correct copy of a declaration from Plaintiff Dennis Strk.

5. Attached as Exhibit 3 is a true and correct copy of a declaration from proposed class member Patricia Catoire.

### First False Assertion in Sullivan Declaration

6. The Sullivan Declaration asserts that there are two different kinds of codes in the NYCAPS system: a "problem code" and some other unnamed code, the "problem code" indicating anything from a performance issue to criminal activity, and the unspecified code flagging the absence of vaccination. Glaringly absent from Sullivan's recitation is how these codes appear to the reader. That is because there is no difference; they are one and the same.

7. Indeed, DOE Human Resources Director Eric Amato explicitly stated in an email to UFT Assistant Secretary Michael Sill and General Counsel Beth Norton that a "[p]roblem code was added to all employees who were placed on 2VM vaccine mandate leave. Our central offices placed this code on all employees who went on the leave." Ex. 1, ¶ 13, Ex. A.

8. Moreover, terminated Plaintiffs had a problem code plainly visible in their payroll portal, indicated by a **"Problem PR"** notation in their salary history tab. Ex. 2, ¶ 5, Ex. A; Ex. 1 ¶ 10 (DOE's "problem code" is also referred to as a "pr" code).

1

## Second False Assertion in Sullivan Declaration

9. The Sullivan Declaration falsely posits that the no one outside DOE's Office of Personnel Investigations has access to the problem code. To the contrary, any non-DOE school or official that wants to learn whether a former DOE employee has a problem code in his or her personnel file can easily do so in a variety of ways.  For example, non-DOE schools which offer DOE-funded positions have access to the DOE's payment portal, Galaxy, which allows them to see problem codes; indeed Plaintiffs present evidence of at least 15 former DOE employees who were not hired at non-DOE schools because the non-DOE schools discovered their problem codes. Ex. 1, ¶¶ 14-18.  Simple phone calls work as well: a former UFT Special Representative explained that she used to "receive[] countless calls every week asking . . . if there was a problem code on an employee's personnel file" and that her UFT colleague next door would then check her computer and "tell [her] 'yes' or 'no' within a minute." Ex. 1, ¶ 8.  In some instances, DOE representatives disclosed the problem codes to prospective employers from non-DOE schools calling to verify employment. Ex. 1, ¶ 19.  In one instance, a third-party HR representative at Bright Start Learning Center of NYC—a non-DOE school operating pursuant to NYS Department of Health Bureau of Early Intervention directives—informed a former DOE employee that she had had been flagged as "ineligible" in her personnel file. Ex. 3, ¶¶ 8-9, 13.

10. It is noteworthy that such evidence was already in the record before Defendants filed the Sullivan declaration, but Defendants did not even attempt to discredit it. ECF No. 162 ¶¶ 11-13 (Plaintiff Solon was told by an official at non-DOE school that it could not hire her because of the problem code in her personnel file).

## **Further Evidence of Irreparable Harm**

11. Plaintiffs' irreparable harm did not cease with their terminations. Instead, the problem codes in their files make them unemployable indefinitely at both DOE and non-DOE schools.

12. The UFT has stated unequivocally that such problem codes "will be removed once [they] are eligible to return to work." Ex. 1, ¶ 13, Ex. A.

13. Thus, Plaintiffs face ongoing coercion to violate their religious beliefs and become vaccinated, in order to become employable – and remove the scarlet letter from their permanent records.

14. The Court is reminded that Plaintiff Solon's problem code was removed within 24 hours of her getting vaccinated. ECF No. 162 ¶ 18.

Dated: New York, New York

      June 3, 2022               Respectfully submitted,

                                      Barry Black
                                        Nelson Madden Black LLP
                                        *Attorney for Plaintiffs*
                                        475 Park Avenue South, Suite 2800
                                        New York, NY 10016
                                        (212) 382-4303

3

# Exhibit H

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X   :

MICHAEL KANE, et al.,                          :
                                               :
                          Plaintiffs,          :
                                               :   Case No.  21-cv-7863 (VEC) (Lead)
          - against -                          :
                                               :
DE BLASIO et al.,                              :
                                               :
                          Defendants.          :
------------------------------------------------------------X   :
                                               :
MATTHEW KEIL, et al.                           :
                                               :
                          Plaintiffs,          :
                                               :   Case No.  21-cv-8773 (VEC)
          - against -                          :
                                               :
THE CITY OF NEW YORK et al.,                   :
                                               :
                          Defendants.          :
------------------------------------------------------------X

### DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1.      My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a

        paralegal consulting business for people who need a partner as they go through the

        Courts, grievances, or life problems.

2.      I respectfully submit this Declaration in support of Plaintiffs' Motion for a

        Preliminary Injunction.

3.      I know the facts stated herein to be true based upon my personal knowledge and

        based upon my review of the files of hundreds of my clients whom I have represented

        in proceedings with the New York City Department of Education ("DOE"), except

1

for statements which are made on information and belief and, as to those, I verily believe them.

4.    I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5.    I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6.    From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7.    I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8.    I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts. During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9.     When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10.    I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes. The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11.    I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12.    I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13. Attached as Exhibit A is a true and correct redacted copy of an email one of my clients received from Eric Amato at the DOE. The email was also sent to UFT Assistant Secretary Michael Sill and copies UFT officials including its General Counsel Beth Norton. The email confirms that DOE employees who were placed on leave without pay for failing to be vaccinated in violation of the DOE's mandate had a problem code (as opposed to any other kind of code) added to their personnel files.

14. I am aware that non-DOE schools located in counties outside New York City receive funds from the NYC DOE for certain teaching positions. These may include, for example, special education or STEM teachers.

15. The DOE pays the salaries for these positions using the same system it uses to pay traditional DOE employees, which is called Galaxy. Galaxy indicates whether the employee has a problem code in his or her file and blocks payment to the employee with this flag/code if viewed in the personnel file.

16. Many of my clients with problem codes in Galaxy have looked for other teaching jobs outside the NYC DOE while their problem code appeals were ongoing.

17. At least 15 of my clients with problem codes were not hired by prospective schools outside the DOE because such schools saw the problem codes in Galaxy, even though those schools were located outside New York City.

18. Such schools were able to see the codes because the position applied for was financed by the DOE and so the school used the Galaxy system and could check the prospective employee's file.

4

19.   I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20.   In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: New York, New York
     June 3, 2022

                                    By: Betsy Combier

5

# EXHIBIT A

From: **Amato Eric** <                                    >
Date: Wed. Feb 9. 2022 at 8:06 AM
Subject: RE: PR code
To: ███████████████████████████ Michael Sill <                    >
Cc: Beth A. Norton
<                >.                    <                    >.                    <                                    >