UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x

MARIA RUSCELLI,

                        Plaintiff     DOCKET NO. **23-CV-07475 (AMD)(LB)**

   -against-

                                      **PLAINTIFF'S REPLY TO**
                                      **DEFENDANT'S OPPOSITION TO**
                                      **HER F.R.C.P. RULE 60(b)(1)(2)(3)**
                                               **MOTION**

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK,

                        Defendants
_____x

## PRELIMINARY STATEMENT

Plaintiff Pro Se Maria Ruscelli ("Plaintiff") filed a Motion for Rule 60(B)(1)(2)(3) on October 1, 2024 after an unjust Decision was issued by this Court that dismissed her case captioned above. She requests that this Court set aside the Decision as a matter of law, justice and equity and grant her request to submit an Amended Complaint that will clarify the fraudulent assertions of the Defendant on the matter of criminalizing the Plaintiff's request for a religious exemption/accommodation, which resulted in her termination.

Plaintiff submitted facts and documents which showed that each of her Claims presented to this Court were factual, and were not simply guesses or made up conclusions. See Declaration of Plaintiff Ruscelli on the Exhibits Submitted In Her Case as Material Facts Pursuant To Rule 12(b)(6), Docket #20, dated 3/6/2024. The documents prove that the statements made in Defendant's Motion To Dismiss were unfounded and untrue. Plaintiff requests a chance to

1

enlarge the proof she has that the Covid Mandate was disciplinary and she should have been given a 3020-a hearing.

This Court should agree to her request for submission of an Amended Complaint in light of the fact that she has new and relevant information about the Problem Code and the disciplinary nature of the process the Defendant believes was fair, but was not. Plaintiff also needs to clarify for the Court the false conclusions reached in the Decision.

Plaintiff requests that all her papers, which include her Complaint, Opposition to the Defendant's Motion To Dismiss, and her Exhibits be incorporated into this Reply in full by reference. Similarly, Plaintiff requests that the Statement of Facts in her Complaint that detailed the procedure under which she was forced to apply and appeal her denials of her religious exemption/accommodation requests be incorporated herein in full by reference as well. She completed her administrative remedies before filing this action in a timely manner with her Right To Sue letter. July 7, 2023 (Ex. A). Therefore, this Court has jurisdiction to hear her case and this Rule 60(b) Motion.

## THE DEFENDANT MADE FALSE STATEMENTS IN THEIR MOTION TO DISMISS AND THE COURT WENT ALONG WITH THIS BECAUSE PLAINTIFF IS PRO SE AND THIS CASE WAS UNJUSTIFIABLY DISPOSED

On April 18, 2024 Plaintiff filed a Letter to the Judge in which she highlighted the false statements made by the Defendant in their Motion papers. (Docket #25, dated 4/18/2024). Defendant refused to recognize the proof submitted in Plaintiff's papers that (1) she was punished with termination for her religious beliefs; and (2) her tenure status required that she be given a 3020-a arbitration hearing before she was taken off salary or terminated.

Here are some points that the Defendant refuses to recognize that Plaintiff considers deliberate fraud on the Court and wants to address more fully in an Amended Complaint:

2

- Plaintiff's fingerprints and personnel file were tagged by a Problem Code on October 4, 2021, when Plaintiff did not hand in a vaccination card saying she had been vaccinated by the COVID-19 vaccine. See Ex. H). But for her religious beliefs, she would have been vaccinated. Therefore, solely because of her religious beliefs that prohibited her from getting vaccinated, the Defendant terminated her and made her into a pariah, shunned by her peers and anyone who had formerly worked with her, despite the fact that she was a stellar teacher throughout her many years working for the Department.

- The United State Supreme Court has ruled in the case of Burlington Northern and Santa Fe Railway Company (2006) that suspension without pay is retaliatory discrimination. Plaintiff can enlarge this issue in an Amended Complaint with new information she has received about the pattern and practice of the Defendant in scheduling "probable cause" hearings to suspended charged teachers awaiting 3020-a hearings. Plaintiff should have been one.

- Defendant's arguments that "enforcement of the vaccine mandate – termination – is not a disciplinary action" (pp. 9, 10, Defendant's Motion To Dismiss) is false, proven to be untrue by the Plaintiff, and contrary to the law and public policy of New York State under the tenure law.

- "The disposition of a Rule 60(b) motion rests within the sound discretion of the District Court." Tyger v. Air Line Pilots Ass'n, Int'l, No. 04 Civ. 0055, 2007 U.S. Dist. LEXIS 16057, at *5 (E.D.N.Y. Mar. 7, 2007) (citing Mendell v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990), aff'd, 501 U.S. 115, 111 S. Ct. 2173, 115 L. Ed. 2d 109 (1991)). Rule 60(b) permits the court to provide relief "based on any of six criteria: (1) `mistake, inadvertence, surprise, or excusable neglect'; (2) `newly discovered evidence'; (3) `fraud .

3

- . ., misrepresentation, or other misconduct of an adverse party'; Williams v. New York City Dep't of Corr., 219 F.R.D. 78, 84 (S.D.N.Y. 2003) (quoting Fed.R.Civ.P. 60(b)).

- Federal Rule of Civil Procedure 60(b)(3) allows a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding" for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). To prevail under Rule 60(b)(3), the movant must, by clear and convincing evidence, "establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case." Stridiron v. Stridiron, 698 F.2d 204, 207 (3d Cir. 1983) (citing Rozier v. Ford Motor Co., 573 F.2d 1332. 1341 (5th Cir. 1978)).

- It is well settled law that the "making of a false statement of law or fact is …. reprehensible"1 and should be sanctioned by federal courts under Rule 11 of the Federal Rules of Civil Procedure (Fed.R.Civ.Pro Rule 11). False statements of law in pleadings to the court that are "utterly unsupportable" or frivolous to the extent that all the law on the subject goes against a claimed statement of law also warrants imposition sanctions. See *Collie v. Kendall*, Civ. 3:98-CV-1678-G, 1999 U.S. Dist. LEXIS 10435, at 8-10 (N.D. Tex. July 6, 1999) Also, groundless statements of law are also sanctionable. *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 36 (2d Cir. 1992).

- Plaintiff can prove that the problem code is a disciplinary flag. Exhibit L. Neither the Defendant nor this Court recognized the significance of Exhibits D, F, G, H,(plus the Eric Amato email), H(a), H(b). Could this be "If I do not discuss or acknowledge an Exhibit, then it never existed" routine? This needs to be addressed in an Amended Complaint.

4

- Defendant argues that Plaintiff does not deserve a 3020-a as part of the due process she is claiming as hers. This is wrong on the law and as a matter of justice and statutory right. The intentional procedural violations of law in the Motion To Dismiss filed by the Defendants and agreed to by the Court is factually and legally wrong. The Attorneys did not know Education Law 3020-a, because they allowed the Court in Broecker to conclude that the charging procedures cited in Ed. Law 3020 and 3020-a were bargained away. Defendant argues that no tenured teacher has a right to a 3020-a due to the changes made to the Collective Bargaining Agreement CBA (Defendant's Motion, p. 10). No where in the law or the CBA are there any suggestions that Ed. Law 3020-a Sections 1 and 2 were changed or bargained away. These Sections of the Law cannot be changed or bargained away, and have stood the onslaught of many City attorneys trying their best to get rid of the charging procedure and finding of probable cause by a vote in an Executive Session of the NYC school board, the Panel For Educational Policy. This very detailed process is the due process that the Tenure Laws of New York State protect, and that give Plaintiff her constitutionally protected right to 14th Amendment due process.

- Education Law §3020(3)(iii) states "(iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated to this subdivision". (See also, Appeal of Principal Forrest, Decision 15,482, NYSED Commissioner's Decisions; and Order of Judge Abadi, EXHIBIT M, Plaintiff's Declaration (Docket #20). Additionally, Plaintiff never waived her right to a 3020-a hearing ((See Hackett v. Milbank, Tweed, Hadley & McCloy, 86 N.Y.2d 146,154- 55, 630 N.Y.S.2d 274,654 N.E.2d 95 [1995]).

- A waiver of a teacher's rights must be knowingly and freely given (Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al., 81 NY2d 446; Matter of Abramovich v. Bd. of

5

Educ. of the Three Villages CSD No. 1, 46 NY2d 450). The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Courts should "indulge every reasonable presumption against waiver, Aetna Ins. Co. v. Kennedy, 301 U. S. 389, 393 (1937), and they should "not presume acquiescence in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n, 301 U. S. 292, 307 (1937). Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:  "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516."

- Education Law 3020 and 3020-a are public policy in New York State, but this Court and Defendant believe that there is a different statute in New York City, where tenured teachers can be fired without a 3020-a because Defendant says so. Thus two separate systems exist side by side dependent solely if the teacher works for the D.O.E. or elsewhere. This distinction creates a "suspect classification" (and disparate treatment), denying New York City teachers equal protection of the law, as guaranteed by Article 1, Section 11 of the New York State Constitution (see Board of Education Levittown Union Free School District v. Nyquist, 83 A.D. 217, 234-239, 443 N.Y.S 2d 843 [2nd Dept. 1981, per Lazer, J.]). It is essentially a return to a "separate but equal" approach to education (see Plessy v. Ferguson, 163 U.S. 537 [1896]), long discredited in cases like Brown vs. Board of Education, 347 U.S. 483 [1954], only here, addressed to religious discrimination. See also Roger Adler's Statement submitted April 18, 2024.

New York's Court of Appeals in Ricca v. Board of Ed. of the City Sch. Dist, 47 N.Y.2d 385, 418 N.Y.S.2d 345 (1979):

6

"The tenure system is not an arbitrary mechanism designed to allow a school board to readily evade its mandate by the creation of technical obstacles ...Rather it is a legislative expression of a firm public policy determination that the interests of the public in the education of our youth can best be served by a system designed to foster academic freedom in our schools and to protect competent teachers from the abuses they might be subjected to if they could be dismissed at the whim of their supervisors. In order to effectuate these convergent purposes, it is necessary to construe the tenure system broadly in favor of the teacher, and to strictly police procedures which might result in the corruption of that system by manipulation of the requirements for tenure."

(See Sanders v. Board of Educ. of City School Dist. of City of New York, 17 AD3d 682 [2d Dept 2005], Morgan v. Board of Educ. of City of New York, 201 AD2d 482 [2d Dept 1994]).

- Another mistake of the Defendant and the Court was to deny Plaintiff's claim to more than a simple denial of any accommodation due to Defendant claiming "undue Burden". The Department has, for more than 20 years, placed anyone who is being investigated or who is thought to be guilty of misconduct of an unexplained nature, into a reassignment room, or "rubber room". See The "Gotcha Squad" and the New York City Rubber Rooms:https://nycrubberroomreporter.blogspot.com/2009/03/gotcha-squad-and-new-york-city-rubber.html

- Tenured employees who work for the Department of Education similar to Plaintiff in this matter, who are accused of anything, from getting an "Unsatisfactory" on their observation reports to having sex with students and everything in between, have been, for more than 20 years, reassigned to a place where they sit and do nothing but get their full salary while awaiting the start of a 3020-a arbitration or the issuance of an unsubstantiated complaint. OPI, the Office of Personnel Investigations, and the Office of Employee Relations both have authority over the reassignment of employees as well as

7

the problem Code. Some people sit in the rubber rooms for more than 10 years. Ironically, since schools were closed in 2020, the place for a rubber room has been home, where the person lives. This reassignment has been called the "rubber home". The sob story given by the Defendant about "undue burden" is simply, and outrageously, false. The accommodation for tenured employees such as Plaintiff in this case could have been reassignment to her home until the temporary COVID mandate ended (in 2023).

- Defendants and the Court, for agreeing to Defendant's argument, are wrong on the new law created with the passing of Groff v Dejoy. Workers with religious objections to vaccine mandates have stronger legal claims now that the US Supreme Court has developed a new standard strengthening protections for workplace religious accommodations. The court unanimously ruled June 29 2023 that an employer cannot deny a religious accommodation under Title VII of the 1964 Civil Rights Act unless it can show that the burden of granting that accommodation "would result in substantial increased costs" to the business. This change will impact faith-related discrimination cases currently winding their way through the administrative and judicial system, including those concerning Covid-19 vaccine mandates.

- Defendant never gave Plaintiff any kind of suggestion for an accommodation, and this violated the new Groff standard. The Court even suggested that Plaintiff never suggested that she would wear a mask or get tested.(Decision, Judge Donnelly, p. 13) This is absurd. New York City would not and did not offer any masking or testing in any of their schools. Plaintiff knew that this was a policy, and she did not carry any burden to come up with accommodations she knew would never be given to her. The Department simply

8

lied about undue burden, as stated above. They have been, and continue to, place anyone who might be guilty of something in rubber home situations.

- When Broecker was filed, the Attorneys never argued anything about the Problem Code because the first time Plaintiff and the rest of New York City unvaccinated teachers heard about it was on February 8, 2022 during a zoom meeting with Betsy Combier. The information given about the Problem Code changed the nature of the consequences of not getting vaccinated from "not" disciplinary to "discipline". Plaintiff was punished and charged with misconduct for holding onto her religious beliefs rather than giving her beliefs up to keep her job.

- The Court's decision to dismiss Plaintiff's free exercise claim should not have been made. Similarly, this Court is wrong on the circumstances and facts when Judge Donnelly ruled that Plaintiff failed to show that the problem code was made public and shown to future employers or non-Department employees. Obviously, the Court neglected to read Exhibits G, H (+ Eric Amato email), H(a), H(b) and Exhibit L. Attorney Barry Black, Betsy Combier, and Karen King do not and never did work for the Department of Education. The Problem Code has been written about and seen by countless members of the public since the first articles were posted about the Code in 2004 (Parentadvocates.org)

- Finally, it is clear that Judge Donnelly had a bias against Plaintiff because Plaintiff is not an Attorney. During this matter, the City Law Department asked for extensions of time to submit their papers to the Court, including on October 19, 2024 for purposes of opposing Plaintiff on the Motion For Reconsideration. The Court granted the City their request the next day, October 20, 2024. (See Docket #29). On November 1, 2024, the Defendant sent

9

Plaintiff the Opposition papers and 19 cases on Rule 60(b). Please had been given until November 15 2024 to submit her Reply. Due to the very busy time at work, Plaintiff asked the City if they would agree to give her ten days' extension of time to submit her Reply. The City told her yes, and wrote a letter to the Court on November 6 requesting a date of November 25 2024 to submit her papers. The Court never responded to this request, leaving Plaintiff without an extension of time. She has done her best.

## CONCLUSION

FRCP Rule 60(b)(1) permits relief from a final judgment based on mistake, inadvertence, surprise, or excusable neglect; Rule 60(b)(2) authorizes a court to relieve parties from a final judgment in the face of 'newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial.' Plaintiff submitted the case of Coombs-Moreno et al., in her Rule 60(b) papers, and there is also the case of Rocco Famiglietti Case No. 23-cv-2754 and Masciarelli, submitted in her Complaint that has new rulings; then there is the case of Lisa Domski, who won $12 million from a jury for compensation after she was denied her religious accommodation request; FRCP Rule 60(b)(3) provides for relief from judgement for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). The Defendant is misrepresenting the information about the Problem Code to deliberately and in bad faith get Plaintiff's case dismissed without a valid reason. The only conclusion that can be reached is that Defendant is making false facts up to undermine the Plaintiff's claims. Plaintiff was punished for her religious beliefs and terminated as an act of religious discrimination and retaliation.

Plaintiff requests that this Court grant her request to submit an Amended Complaint.

Dated: November 14, 2024

/s/Maria Ruscelli

STATE OF NEW YORK
COUNTY OF KINGS
SIGNED BEFORE ME ON 11/15/2024
MARIA RUSCELLI

KAMAL P. SONI
Notary Public, State of New York
No. 01SO6089949
Qualified in Kings County
Commission Expires March 31, 2027

10