UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
           :

**MARIA RUSCELLI**,
           :

                        Plaintiff,     :  **MEMORANDUM DECISION AND ORDER**

          – against –     :

           23-CV-7475 (AMD) (MMH)
           :

**THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK**,    :

                     Defendant.    :

           :
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

      The *pro se* plaintiff alleges that the defendant, her former employer, discriminated against her on the basis of her religion when it denied her request for a religious exemption from the New York City Department of Education ("DOE")'s vaccine mandate requiring DOE employees to be vaccinated against COVID-19.[1]  Before the Court is the defendant's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the defendant's motion is granted and this action is dismissed.

## BACKGROUND[2]

      The plaintiff commenced this action on October 5, 2023.  (ECF No. 1.)  The Court granted the defendant's motion to dismiss the original complaint, but granted the plaintiff leave

---

[1] The Court treats the plaintiff's lawsuit against the DOE as one against the City of New York.  *See Broecker v. New York City Dep't of Educ.*, No. 23-655, 2023 WL 8888588, at *1 n.1 (2d Cir. Dec. 26, 2023).

[2] The facts are drawn from the amended complaint, the documents attached as exhibits, the plaintiff's opposition to the motion to dismiss, and the documents attached to the plaintiff's opposition to the motion to dismiss.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in [her] papers opposing the motion."); *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("[A] district

to amend.  (*See* ECF No. 26; *ECF Order dated Nov. 15, 2024*.)  In her amended complaint, which she filed on February 13, 2025, the plaintiff made similar claims, based on her assertion that the DOE discriminated against her on the basis of her religion.  (ECF No. 35.)  The defendant moves to dismiss the amended complaint in its entirety for failure to state a claim.  (ECF No. 36.)  The Court assumes familiarity with the underlying facts of this case, which are discussed in detail in the Court's memorandum decision granting the defendant's first motion to dismiss (ECF No. 26 at 2–6), but restates the relevant facts in brief.

The plaintiff, a tenured special education teacher with the DOE, started teaching in 2013.  (ECF No. 35 ¶ 11; *id*. at 67.)  In August 2021, in the midst of the COVID-19 pandemic, the Commissioner of the New York City Department of Health and Mental Hygiene issued a vaccine mandate requiring all DOE employees to show proof of vaccination against COVID-19.  (ECF No. 1 at 64.)  *See also Jean v. Dep't of Educ. of City of New York*, No. 24-CV-2264, 2025 WL 2782533, at *1 (E.D.N.Y. Sept. 30, 2025) (arising out of the same underlying facts).

On September 10, 2021, the DOE and the United Federation of Teachers entered into an arbitration agreement that provided a process for DOE employees to request exemptions to the vaccine mandate.  (ECF No. 35 ¶ 25 (the "Scheinman Award").)  Pursuant to that process, the plaintiff applied for an exemption based on her religious beliefs on September 19, 2021.  (*Id*. ¶ 41.)  She argued that the vaccine mandate violated her "sincerely held religious and innately held beliefs" as a "Christian believer," as well as her "right to individual autonomy and bodily

---

court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." (citation omitted)).  "[W]hen any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 48 (S.D.N.Y. 2019) (quoting *Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002)).

2

integrity." (*Id.* at 64.)  She further claimed that she could not "be forced to partake of or support medicines manufactured by or tested on fetal cells and/or aborted babies," and did not "support the eating, drinking, or forced injection usage of blood into the body because blood is the transmitter of life and the carrier of disease and generational spiritual afflications . . . [and] is also clearly forbidden by [her] faith." (*Id.* at 65.)

On September 20, 2021, the DOE denied her request.  (*Id.* ¶ 42.)  The next day, the plaintiff appealed the denial to the arbitrator.  (*Id.* ¶ 43.)   On September 24, 2021, the arbitrator affirmed the DOE's decision after a hearing.  (*Id.* ¶ 44.)  On October 1, 2021, the DOE notified the plaintiff by email that she could not come into the school building and that it would place her on leave without pay starting on October 4, 2021.  (*Id.* ¶ 45.)[3]  The DOE removed her from its payroll on October 27, 2021.  (*Id.* ¶ 45.)  The plaintiff later learned that her fingerprints were "placed on the [DOE's] 'no-hire/inquiry'/'Problem Code' database," which "tags her file with misconduct."  (*Id.* ¶ 60.)[4]

On November 17, 2021, the plaintiff and 82 former teachers who were terminated for refusing to comply with the vaccine mandate sued the DOE, teachers unions, and other parties. *See generally Broecker v. N.Y.C. Dep't of Educ.*, 573 F. Supp. 3d 878 (E.D.N.Y. 2021), *aff'd,* No. 23-655, 2023 WL 7485465 (2d Cir. Nov. 13, 2023), and *aff'd,* No. 23-655, 2023 WL 8888588 (2d Cir. Dec. 26, 2023).[5]  The *Broecker* plaintiffs asserted due process claims under the

---

[3] The plaintiff attached the email, which is dated October 2, 2021, to the amended complaint.  (*See* ECF No. 35 at 61.)

[4] The plaintiff claims that her fingerprints were placed in the Problem Code database "the very same day that LWOP Suspended her from payroll at the DOE, October 4, 2021." (ECF No. 35 ¶ 60.)

[5] The plaintiff alleged in the original complaint that she was a party in *Broecker v. N.Y.C. Dep't of Educ.*, No. 21-CV-6387 (E.D.N.Y. 2021).  Although she does not include that allegation in the amended complaint, she is a named plaintiff in the *Broecker* action.  The Court takes judicial notice of the litigation and the related filings, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Glob. Network Commc'ns Inc. v. City*

3

Fourteenth Amendment, claims for violations of statutory and contractual rights under Education Law § 3020 and § 3020-A, and collusion and aiding and abetting claims under 42 U.S.C. § 1983. *Id.* at 881.  They alleged, among other things, that the defendants violated their constitutional right to due process when they terminated the plaintiffs' employment for refusing to be vaccinated on religious grounds.  *Id.* at 888.  The district court dismissed their claims, and the Second Circuit affirmed.  *Broecker*, 2023 WL 8888588, at *2.

Following the Second Circuit's decision in *Kane v. DeBlasio*, 19 F.4th 152 (2d Cir. 2021) ("*Kane I*"), the plaintiff appealed the denial of her religious exemption request to a Citywide Panel.  (ECF No. 35 ¶ 47.) [6]  On December 3, 2021, the DOE's Human Resources Department confirmed that it had received her appeal and forwarded her documents to the Citywide Panel. (*Id.* ¶ 56.)  On January 7, 2022, the DOE's Human Resources Department emailed the plaintiff follow-up questions.  (*Id.* ¶ 57.)  The Citywide Panel denied the plaintiff's request on February 15, 2022, finding that the "DOE has demonstrated that it would be an undue hardship to grant this accommodation to appellant given the need for a safe environment for in person learning." (*Id.* ¶ 58.)[7]  The DOE terminated the plaintiff's employment effective March 17, 2022.  (*Id.* ¶ 59.)

---

*of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted); *see also Robinson v. Vigorito, Barker, Patterson, Nichols & Porter, LLP.*, No. 19-CV-2914, 2019 WL 13417192, at *1 (E.D.N.Y. Aug. 20, 2019) (noting that the court "may take judicial notice of prior lawsuits" (citing *Glob. Network Commc'ns Inc.*, 458 F.3d at 157)).

[6] In *Kane I,* the Second Circuit ordered that the plaintiffs challenging the vaccine mandate "receive fresh consideration of their requests for a religious accommodation by a central citywide panel . . . adher[ing] to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law."  19 F.4th at 176–77.  The plaintiff asserts that she appealed to the Citywide Panel on November 19, 2021 (ECF No. 35 ¶ 47), but the Second Circuit issued its decision in *Kane I* on November 28, 2021.

[7] The amended complaint states that the plaintiff received the final decision from the Citywide Panel on February 15, 2022.  (*Id.* ¶ 58.)  However, the email with the final decision, which she attached to the amended complaint, is dated March 7, 2022.  (*Id.* at 69.)

The plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue on July 7, 2023. (*Id.* ¶ 10; *id.* at 33–34.)

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.* at 678 (citations and alterations omitted).

Because the plaintiff is proceeding *pro se*, the Court construes her complaint liberally and and evaluates it by "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The plaintiff's claims must be read "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (citation omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations [in the amended complaint] as true and draw[s] all reasonable inferences in the plaintiff[']s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021). At the motion to dismiss stage, the court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated into the

5

complaint by reference." *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).  The court may consider any "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in [the] plaintiff['s] possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit," as long as the plaintiff relied on the "terms and effect of a document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

A court may also consider the factual allegations in a *pro se* plaintiff's opposition papers to the extent that those allegations are related to and are consistent with the complaint.  *See Schwartz v. Middletown City Sch. Dist.*, No. 23-CV-01248, 2024 WL 1257095, at *1 n.4 (S.D.N.Y. Mar. 25, 2024) ("Courts in *pro se* cases routinely consider new facts raised in opposition papers to the extent that they are consistent with the complaint." (citation omitted)).

The plaintiff includes exhibits with her amended complaint and opposition, including the EEOC Notice of Right to Sue, documents related to the denial and appeals of her religious exemption request, and documents filed in *Broecker* and *Kane v. DeBlasio*.[8]  The Court considers these documents because the plaintiff relies on them and includes them with the complaint or incorporates them by reference.  In addition, the Court considers the documents filed in other litigations, "not for the truth of the matters asserted in the other litigation[s], but rather to establish the fact of such litigation[s] and related filings." *Glob. Network Commc'ns. Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

---

[8] The Court does not use the numerical labels that the plaintiff uses for her exhibits because the labeling is inconsistent and some exhibits are not labeled.

6

# DISCUSSION

The plaintiff asserts claims for religious discrimination in violation of Title VII and the Equal Protection Clause of the Fourteenth Amendment, as well as claims pursuant to 42 U.S.C. § 1983 for violations of her First and Fourteenth Amendment rights. She also brings various state and city law claims, including claims under the New York State Human Rights Law, New York City Humans Rights Law, New York Constitution, and Education Law § 3020 and § 3020-A, as well as a fraud in the inducement claim. The defendants contend that the plaintiff's claims are either without merit or barred by *res judicata*.

## I.     Failure to Accommodate Claim

Title VII makes it unlawful for an employer to discriminate against an employee or prospective employee based on religion. 42 U.S.C. § 2000e-2(a)(1). "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on . . . the employer's business." *Id.* § 2000e(j).

Under Title VII, "when an employee has a genuine religious practice that conflicts with a requirement of employment," the employer typically must offer the employee a "reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002). To demonstrate an "undue hardship," an employer must show that the burden of granting an accommodation "is substantial in the overall context of [the] employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023).

In denying her appeal, the Citywide panel explained that "DOE has demonstrated that it would be an undue hardship to grant this accommodation . . . given the need for a safe environment for in person learning." (ECF No. 35 ¶ 58.) The plaintiff dismisses the

7

"invocation of 'undue hardship' defenses" as "plainly false pretexts attempting to cover for the Defendants' explicit religious discrimination." (*Id.* ¶ 78.)

The plaintiff does not allege that she requested any accommodation when she applied for a religious exemption. Nevertheless, the plaintiff alleges in the amended complaint that the defendant could have permitted her to work remotely or report to a "rubber room" where the defendant "scattered the re-assigned employees who could not be near children." (ECF No. 35 ¶¶ 94–97.) As the Court explained in dismissing the original complaint, permitting the plaintiff to work remotely would have been an undue burden for the defendant, because the plaintiff was a special education teacher whose "in-person presence within a special education classroom would have been of paramount value and importance to effectively teach and attend to the individualized needs of her special needs students." *Beickert v. New York City Dep't of Educ.*, No. 22-CV-5265, 2023 WL 6214236, at *6 (E.D.N.Y. Sept. 25, 2023).

In *New Yorkers for Religious Liberty, Inc. v. City of New York,* the Second Circuit found that dismissal of similar claims on undue hardship grounds was appropriate, because the complaint "on its face identifies the Panel's undue-hardship rationale, but does not plead allegations that contradict that finding. Instead, [it] offers only threadbare conclusions." 125 F.4th 319, 333 (2d Cir. 2025), *cert. denied sub nom. Kane v. New York, NY*, No. 25-126, 2025 WL 3620461 (U.S. Dec. 15, 2025); *see also Bonilla v. City of New York*, No. 22-CV-7113, 2023 WL 8372859, at *5 (S.D.N.Y. Dec. 4, 2023) (noting that "[a]lthough [the plaintiff] alleges that hostility toward her religious beliefs was the real reason for the denial, these 'bald assertions' are insufficient to state a claim" (citations omitted)). The plaintiff "fails to offer any non-conclusory allegations that the denials were related to [her] religious beliefs." *New Yorkers for Religious*

8

*Liberty, Inc.*, 125 F.4th 319 at 333 n.7. Accordingly, her failure to accommodate claim is dismissed.

## II. Selective Enforcement Claim

The plaintiff also alleges that the defendants "engaged in selective enforcement of their own laws, rules, regulations, and ordinances against Plaintiff based upon the Plaintiffs religion and Plaintiff's constitutionally protected conduct," and that "[i]n so doing, Defendants intentionally and, with malicious or bad faith intent to injure Plaintiff, selectively treated Plaintiff differently from other similarly situated employees and acted with no rational basis for the difference in treatment." (ECF No. 35 ¶ 100.)

"In order to state a selective enforcement equal protection claim, a plaintiff must plausibly allege: '(1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Mora v. New York State Unified Ct. Sys.*, No. 22-CV-10322, 2023 WL 6126486, at *14 (S.D.N.Y. Sept. 19, 2023) (quoting *Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir. 1996). "Conclusory allegations of selective treatment may not survive a motion for dismissal." *D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 386 F. Supp. 2d 119, 128 (E.D.N.Y. 2005), *aff'd sub nom. D.F. v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 180 F. App'x 232 (2d Cir. 2006) (citing *Albert v. Carovano*, 851 F.2d 561, 572, 573–74 (2d Cir. 1988)).

The plaintiff alleges that Mayor Eric Adams "carved out exemptions [from New York City's private employee COVID-19 vaccine mandate] for professional athletes, performers, and their entourages, election workers, school bus drivers and delivery personnel, as well as most of the private sector" (ECF No. 35 ¶ 18), and that the Scheinman Award "favored Christian

9

Scientists" (*Id.* ¶ 30.)  These allegations are insufficient to state a selective enforcement claim. *See Fugelsang v. Dep't of Educ. of New York City*, No. 23-CV-08332, 2025 WL 974276, at *4 (E.D.N.Y. Mar. 31, 2025) (concluding that the plaintiff's assertion that Mayor Adams gave certain groups preferential treatment "undermines Plaintiff's allegation of selective enforcement" because "by Plaintiff's logic, the reason that he did not receive an accommodation is because, as a teacher, he was not a member of one of the mayor's favored groups—not because he holds certain religious beliefs"); *Hurley v. Dep't of Educ. of City of New York*, No. 24-CV-1664, 2025 WL 2711471, at *9 (E.D.N.Y. Sept. 23, 2025) (dismissing selective enforcement claim premised on the Scheinman Award's alleged preferential treatment of Christian Scientists because "the Citywide Panel, to which Plaintiff further appealed the denial of her religious exemption, was created to correct the Scheinman Agreement's bias toward established religious organizations" and noting that "[i]n any event, merely referencing Christian Scientists, or athletes and performers, in such a vague and general way does not satisfy the comparator prong of a selective enforcement claim").

In her opposition, the plaintiff contends that "the 'criteria' mystery (i.e. details as to what the criteria are) of the Citywide Panel show animus and discrimination against the unvaccinated Plaintiff because anything could be used against her." (ECF No. 40 at 18.)  However, "the Court cannot assess whether [the] Defendants treated [the plaintiff] differently that [sic] they treated anyone else" because she "has not pled that [s]he is similarly situated to any person or specific group." *Famiglietti v. New York City Dep't of Sanitation*, No. 23-CV-2754, 2024 WL 4606817, at *3 (E.D.N.Y. Oct. 28, 2024).  Nor has the plaintiff alleged that the defendants treated her less favorably than similarly situated individuals because of her religion.  Therefore, "the Court may reasonably infer that it was not the substance of plaintiff's stated religious beliefs

10

that resulted in [her] request being denied." *Mora*, 2023 WL 6126486, at *14. Accordingly, her selective enforcement claim is dismissed.

### III. First Amendment Claims

#### a. Free Exercise Claim

The First Amendment's Free Exercise Clause "protects an individual's private right to religious belief, as well as 'the performance of (or abstention from) physical acts that constitute the free exercise of religion.'" *Kane I*, 19 F.4th at 163–64 (quoting *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014)). However, it "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Slattery v. Hochul*, 61 F.4th 278, 292 (2d Cir. 2023) (citation omitted).

In the amended complaint, the plaintiff "challenges Defendant's deprivation of Plaintiff's due process in the manner in which the COVID Mandate was implemented, not the Mandate itself." (ECF No. 35 ¶ 23.) However, the plaintiff also argues that the vaccine mandate "cannot be seen as neutral and generally applicable" and that the Scheinman Award "was not neutral and generally applicable." (*Id.* ¶¶ 19, 31.) To the extent the plaintiff is making a facial challenge to the DOE's vaccine mandate, that claim is decisively foreclosed by binding precedent. The Second Circuit has already found that "[t]he Vaccine Mandate, in all its iterations, is neutral and generally applicable." *Kane I*, 19 F.4th at 164. "That holding from *Kane I* remains binding against [the plaintiff's] facial Free Exercise Clause challenge." *New Yorkers for Religious Liberty, Inc.*, 125 F.4th at 330.

To the extent the plaintiff means to bring an as-applied challenge, that claim suffers from the same defects that the plaintiff's failure to accommodate claim does — the plaintiff "offers

11

only threadbare conclusions" to contradict the defendant's undue hardship rationale for denying her request for a religious accommodation. *New Yorkers for Religious Liberty, Inc.*, 125 F.4th at 333.[9]  Accordingly, the plaintiff's Free Exercise claim is dismissed.

### b. Retaliation Claim

The plaintiff claims for the first time in her opposition that the defendants retaliated against her in violation of the First Amendment. "It is well settled that a party cannot assert a claim for the first time in its motion papers, nor can it attempt to amend its complaint through its motion papers." *Vesterman v. Dep't of Educ. of City of New York*, No. 24-CV-2755, 2025 WL 2782408, at *7 (E.D.N.Y. Sept. 30, 2025). This rule applies equally to *pro se* parties. *Herrera v. Navient Corps.*, No. 19-CV-6583, 2020 WL 3960507, at *5 (E.D.N.Y. July 13, 2020) ("Even a plaintiff proceeding *pro se* may not raise entirely new causes of action for the first time in [her] opposition papers." (citations omitted)). Accordingly, the Court does not consider the plaintiff's First Amendment retaliation claim, and the claim is dismissed.[10]

---

[9] The plaintiff's claims are not similar to the two plaintiffs in *New Yorkers for Religious Liberty, Inc.*, whom the Second Circuit found had stated cognizable First Amendment Claims. One plaintiff's request for accommodation was reviewed under the "old Arbitration Award Standards," not the Citywide Panel standards, which "could present a First Amendment problem" in view of the Second Circuit's earlier observation that the older standards were "very likely unconstitutional." *New Yorkers for Religious Liberty, Inc.*, 125 F.4th at 334–35. The second plaintiff alleged that the Citywide Panel "dismissed some of her religious beliefs as too idiosyncratic to be religious in nature." *Id.* at 335. Here, the plaintiff alleges that the Citywide Panel reviewed her request for accommodation, and does not claim that the Citywide Panel questioned the bases of her religious beliefs. (*See* ECF No. 35 ¶ 58.) Accordingly, she does not state a First Amendment claim.

[10] The plaintiff's use of the word "retaliation" in the Amended Complaint (ECF No. 35 ¶¶ 4, 6) was not sufficient under Federal Rule of Civil Procedure 8(a)(2) and did not give the defendants notice of a First Amendment retaliation claim. Moreover, the plaintiff has not alleged any facts that would support a claim that she was terminated for engaging in religious speech. Instead, the complaint alleges that the plaintiff was terminated for failing to comply with the vaccine mandate.

## IV. Stigma Plus Claim

The Fourteenth Amendment's Due Process Clause protects against a person's loss of reputation when that loss is associated with the deprivation of a federally protected liberty interest. *Bd. of Regents v. Roth*, 408 U.S. 564 (1972); *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994). "For a government employee, a cause of action under § 1983 for deprivation of a liberty interest without due process of law may arise when an alleged government defamation occurs in the course of dismissal from government employment." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004). "This type of claim is commonly referred to as a 'stigma-plus' claim." *Id.*

To state a "stigma plus" claim, the plaintiff must show (1) that the government made stigmatizing statements that call the plaintiff's "good name, reputation, honor, or integrity" into question, (2) that these statements were made public, and (3) that the statements were made "concurrently in time" to the plaintiff's dismissal. *Peres v. Oceanside Union Free Sch. Dist.*, 426 F. Supp. 2d 15, 27 (E.D.N.Y. 2006). Further, "[t]o prevail on a stigma plus claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (citation and quotation marks omitted).

The plaintiff alleges that she has been "stigmatized without a name clearing hearing on the matter" because the defendant placed her fingerprints in the "Problem Code" database. (ECF No. 35 ¶ 65.) She claims that this "mean[s] that her career is forever tainted" and "block[s] her from ever getting a job with the Defendant due to the stigma now attached to her file." (*Id.* ¶ 68.) The plaintiff alleges that it also affects her ability to get a job in the private sector because "if [she] gets nominated for any position, even in the private sector she must go through a

13

background check through the PETS system in which she will come up ineligible, even with most private schools and vendors in New York City." (*Id.* ¶ 70.) However, courts in this circuit have consistently held that "DOE's placement of a former employee in its internal problem-code database is insufficiently 'public to future potential employers' to create a liberty interest and support a due process claim." *Valvo v. Dep't of Educ. of City of New York*, No. 19-CV-8341, 2021 WL 1063759, at *4 (S.D.N.Y. Mar. 18, 2021); *see also Alterescu v. N.Y.C. Dep't of Educ.*, No. 21-CV-925, 2022 WL 3646050, at *10 (S.D.N.Y. Aug. 23, 2022); *Arroyo v. N.Y.C. Dep't of Educ.*, No. 19-CV-7416, 2020 WL 4570380, at *14 (S.D.N.Y. Aug. 6, 2020). This is the case even where — as here — a plaintiff alleges that "the FBI refers to Defendant's budgetary database, Galaxy, which houses problem code designations, and anyone with the code cannot be paid by [the Department of Education] or any vendors working in New York City." *Jean*, 2025 WL 2782533, at *6 n.7.[11]

Accordingly, the plaintiff's stigma plus claim is dismissed.

## V.     Res Judicata

The defendant argues that the plaintiff's due process claims, as well as her claims under 42 U.S.C. § 1983 and Education Law § 3020 and § 3020-A, are barred by *res judicata* because they were brought in the earlier action, *Broecker*, 573 F. Supp. 3d 878. (ECF No. 37 at 20–23.) The plaintiff argues that the Court should allow her claims to proceed because "[t]he Broecker

---

[11] The plaintiff has not alleged that the information in the DOE problem code database is false. "A plaintiff generally is required only to raise the falsity of the[] stigmatizing statements as an issue, not prove they are false." *Patterson*, 370 F.3d at 330. The plaintiff does not dispute that her fingerprints were placed into the DOE problem code database because she did not get vaccinated against COVID-19. (ECF No. 35 ¶ 60.) Nor does she dispute that she did not get vaccinated. Therefore, her sigma plus claim fails. *See Hurley*, 2025 WL 2711471, at *14 ("[T]here is no dispute that the allegedly stigmatizing statements, here the Problem Codes in Plaintiff's file, were not false. That is fatal to Plaintiff's stigma plus claim.").

14

case never pled a problem code or the misconduct stigma that Plaintiff pleads in this case, nor did Plaintiffs' attorney have any facts relevant to the argument that the Citywide Panel did not meet the standard set by the Court of Appeals in deciding religious accommodations according to Title VII and *Groff v. Dejoy*." (ECF No. 40 at 6.)

"*Res judicata*, or claim preclusion, dictates that 'a final judgment on the merits in one action bars subsequent relitigation of the same claim by the same parties.'" *Toth v. N.Y.C. Dep't of Educ.*, No. 21-CV-4245, 2023 WL 121733, at *4 (E.D.N.Y. Jan. 5, 2023) (quoting *Greenberg v. Bd. of Governors of Fed. Rsrv. Sys.*, 968 F.2d 164, 168 (2d Cir. 1992)). "A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014). A party raising a *res judicata* defense must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

As the Court explained in dismissing the original complaint, the plaintiff's claims in *Broecker* were dismissed on the merits and involved the same plaintiff, the same defendant, and parties in privity with the plaintiff and defendant. (*See* ECF No. 26 at 16-17.) Accordingly, the defendant has satisfied the first two elements of *res judicata*.

With respect to the third prong — whether the claims asserted in this action were or could have been raised in the earlier action — the Court considers "whether the second lawsuit concerns the same claim — or nucleus of operative facts — as the first suit, applying three considerations: (1) whether the underlying facts are related in time, space, origin, or motivation;

15

(2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations." *Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018) (internal quotation marks omitted).  In *Brocker*, the plaintiffs challenged the DOE's procedures for enforcing the vaccine mandate, arguing that they violated their due process rights.  The plaintiffs also brought aiding and abetting claims under 42 U.S.C. § 1983.

      The plaintiff does not dispute that these claims were raised in the prior action, or that both actions arise out of the same "nucleus of operative facts." *Soules*, 882 F.3d at 55.  Instead, she maintains that this case is not barred by *res judicata* because *Broecker* did not involve arguments about the "problem code" and because "[t]he full picture of the lawless Citywide Panel has only come to light recently."  (ECF No. 40 at 6.)  Therefore, the plaintiff argues, her claim that "neither the SAMS arbitration panel nor the Citywide panel provided any pre-deprivation due process required for all employees with property and liberty rights to their tenured positions" was not presented in *Broecker*.  (*Id.*)

      In fact, the district court in *Broecker* was explicit that "the pre- and post-deprivation process Plaintiffs have been afforded upon the deprivation of Plaintiffs' continued employment and pay were, and remain, constitutionally adequate." *Broecker*, 585 F. Supp. 3d at 312.  The Second Circuit "agree[d] with the district court that plaintiffs have not pleaded any facts that would suggest that the pre- or post-deprivation processes afforded to them were constitutionally deficient." *Broecker*, 2023 WL 8888588, at *2.  The claims in *Broecker* "stemmmed from the same disciplinary proceedings and involved the same essential facts." *Morales v. N.Y.C. Dep't of Educ.*, 808 F. App'x 35, 37 (2d Cir. 2020).  Indeed, both cases "are predicated on nearly identical facts — implementation of the vaccine mandate, the rejection of plaintiffs' claimed

16

religious objections, and their subsequent termination." *Dipietro v. N.Y. State Unified Ct. Sys.*, No. 22-CV-7943, 2024 WL 1235630, at *4 (E.D.N.Y. Feb. 14, 2024).

To the extent that the plaintiff is claiming that she has new evidence relevant to her due process claims, that argument is unavailing. *Res judicata* "applies even where new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021) (quoting *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999)). The plaintiff asserts that "[u]ntil members of the Citywide Panel were deposed in 2022-2023, the names and roles of the members were unknown" and that "[t]he City kept the information secret." (ECF No. 35 ¶ 55.) According to the plaintiff, "[t]he only conclusion . . . that can be reached is that the Panel randomly decided on who should get an accommodation, religious or medical, and the determination was based on the minimum possible. Groff v DeJoy and Human Rights Law were not a standard that were reviewed." (*Id.*) Though she asserts, without support, that the City kept information about the Citywide Panel secret, the plaintiff does not explain how this is evidence of fraudulent concealment or why the plaintiffs could not have discovered it in the *Broecker* action.[12]

The plaintiffs' due process claims, as well as her claims under 42 U.S.C. § 1983 and Education Law § 3020 and § 3020-A, are therefore barred by *res judicata*.

---

[12] The plaintiff argues that this evidence shows that the Citywide Panel was a "scam" because it "never gave any facts about the 'undue burden.'" (ECF No. 40 at 6.) However, documentary evidence shows that the Citywide Panel denied her request for a religious exemption because "[i]t would be an undue hardship to grant this accommodation to the employee given the need for a safe environment for in-person learning." (ECF No. 35 at 69.)

17

## VI. State and City Law Claims

The Court declines to exercise supplemental jurisdiction over the plaintiff's remaining state and city law claims. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage.").

## VII. Leave to Amend

The plaintiff asks the Court to grant her leave to amend if it dismisses her amended complaint. (ECF No. 35 at 31.) "Although district courts generally grant *pro se* plaintiffs leave to amend a complaint, that leave may be denied when a plaintiff has already been given an opportunity to amend." *Zaerpour v. Bank of Am. Corp.*, No. 23-845, 2024 WL 2069555, at *2 (2d Cir. May 9, 2024) (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)). Further leave to amend is not warranted when the "problem with [the plaintiff's] causes of action is substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). As explained in this decision and the Court's previous order, the problems with the plaintiff's claims are substantive, meaning that "[r]epleading would ... be futile." *Id.*; *see also Cobham v. N.Y. Racing Ass'n, Inc.*, No. 22-CV-456, 2024 WL 4198453, at *10 (E.D.N.Y. Sept. 16, 2024) ("[A]mendment by a *pro se* party may be denied as futile where, as here, the pleading's deficiencies cannot be cured."). Accordingly, the Court denies the plaintiff further leave to amend the complaint.

18

## CONCLUSION

For these reasons, the defendant's motion to dismiss is granted in its entirety. The plaintiff's claims are dismissed, with prejudice.

The Clerk of Court is respectfully directed to enter judgment, to close this action, to mail a copy of this Memorandum and Order to the plaintiff, and to note the mailing on the docket.

**SO ORDERED.**

                                                  s/Ann M. Donnelly

                                                  ANN M. DONNELLY
                                                  United States District Judge

Dated: Brooklyn, New York
         January 6, 2026